325-0155 Tory B. Briznick v. BB Rental Homes, LLC Alright, Mr. Schrock, you may proceed. May it please the court, I am John Schrock, and I represent the defendant appellate in this case, BB Rental Homes. The pleadings in this case consisted of a complaint for declaratory judgment filed by the plaintiff, and then the defendant filed a counterclaim for an implied easement. In a declaratory judgment action, there's three requirements that are required for the plaintiff to prevail. The first is a legal, tangible interest, the second is an opposing interest, and the third is an actual controversy. In this case, it's my position on behalf of my client that there's no legal, tangible interest that the plaintiff has in this case. The well in question is not located on any property actually owned by the plaintiff. Who does own the property where the well is located? Well, it's a public easement, it's a public easement. So no one's deed? No one's deeded it, and it's one of those quirks that that's where the well was dug, it's not on anyone's property. By permit? By permit, that's correct, by permit, and it's always serviced my client's plot. And so my position is that the plaintiff in this case has no more interest in the use of this well than anybody that lives in the entire, up and down along that street. Anybody under his position, anybody that lived there, could conceivably, if they wanted to tap into it, would have the same right. Are you alleging that your client is entitled to exclusive use of the well? So that is part of my counterclaim, because I did allege that we have the exclusive right of it, but as we'll develop, if the plaintiff doesn't have any legal, tangible interest and can't prove his claim for declaratory judgment, my suggestion is that that in and of itself means that the complaint is dismissed, and I don't need to go any further. I believe that that's... But if you're wrong, for the sake of analysis, if you're wrong about that, you don't seem to have developed the exclusive possession argument in your appellate brief. Well, so it's... The problem I think that I have is that we need to prove that it was open and obvious and exclusive, and I don't think that that really... That's tough under these circumstances. So my position is that if we... If you send both of us away and rule against us on the counterclaim and against plaintiff on his complaint, that leaves the status quo. The trial judge's ruling is reversed as it relates to the plaintiff's claim, and that leaves it in the status quo, and my client still gets to use it. That's my position. All right. Do you believe that B.B. Holmes established a claim for implied easement by prior use?  I think we did. We used it before this. My client actually paid for a replacement well and has maintained it since she owned it, and I think that if you look at... If you go back a ways, you can see that there is a use by... It's only serviced the house that my clients own. And so I do believe that there is a... We've established that, that we have an implied easement to use it. Whether or not it's exclusive or not is a little more difficult proposition. So I acknowledge that that is because it's... I don't think anybody in this case knew where it was actually located at. And so... But my position is that if you turn... If you essentially turn both of us away and rule against both of us, that leaves the status quo and that my client still gets to use it. That's my position in this case. But not exclusively. Just gets to use it, you're saying? Gets to use it, yes.  All right. So the question is, what case did the plaintiff put forward to be allowed to attach for a well-sharing agreement where we have to share this? And I submit that the plaintiff in this deck action doesn't have any legal recognizable right because it's not on his lot. If it was on his lot, then that is problematic for me. But in this case, the plaintiff has no legal right to it. It's not on your lot either. Well, you're right about it. But that's why I think that we do have a prior use easement on it because we did use it previously. It's kind of an interesting case. Well, I mean, that certainly speaks to your right to continued use. Yes. Your easement. But it doesn't necessarily speak to exclusivity. Well, you're right about that. But I submit that the plaintiff doesn't have a right to attach to a well-sharing agreement in the first place. I don't think they've proven their case. How is the plaintiff any different than any other neighbor that lives up and along this street? He doesn't have a personal right to this well. He doesn't have a – and that's what – there's a case I cited on this. What personal right or tangible interest does the plaintiff have with respect to this well? And I submit the answer is plaintiff has none. Is anyone disputing that BB has an implied easement? So I think Mr. Zdarsky is going to tell you that they're disputing that we have an implied easement. They seem to have accepted. There's no cross-appeal here. What's that? There's no cross-appeal here, right? There's no cross-appeal. You're correct. Right. So the trial court, I guess, technically found that we have one, but she ruled that we have to share it. We would have an implied one to continue to use it. But under her view, under – she granted plaintiff's relief under the DEC action and required us to enter into a well-sharing agreement. And my position is that the facts and the law don't support that finding. And, again, there's nothing wrong with the well that services the lot that Mr. Bliznik lives on. It pumps adequate water pressure. Its water quality is adequate. It passed both tests when plaintiff bought this property. He and his father want a better well, all right? Well, that's not – I mean, you know, we could all want a better well, and there's things that he could do to actually obtain better water quality. He could put in a filtration system or whatever or put in a pressure tank. There's different things he could do, but the fact that he wants a better well doesn't give him the legal right to require my client to enter into a well-sharing agreement. So that's – you know, we kind of went right to it. But my point is that, in this case, I don't really see how the plaintiff has established a case to require my client to enter into a well-sharing agreement for a well that's not on his actual property. And that, I believe, is absolutely undisputed. I don't see anything that, you know, he can't really argue on. And it's clearly in the survey that he got when he purchased the property. It's attached to his own complaint. I'm not looking for – I think counsel kind of thinks I'm trying to look for a prescriptive easement. It's not. It's just an implied easement, in this case, is what I'm looking for, due to the fact that my client had previously used it. My client, you know, testified that she had actually repaired the pump on this, or replaced the pump on it, and clearly they used it. And so given the facts and everything in this matter, I'm requesting that you reverse the trial court's finding that we have to enter into a well-sharing agreement, and then that we do have an implied use of easement for this, for use it, and to leave the status quo before the parties came to court. And that's all I have, if there's any other questions. So when Judge Breslin said it's the court's opinion that in 1971 the well, which was permitted and dug by the owner of record, and neither party here was the owner of record, of course, for the use of one or all of the lots in question, it's likely that the well was intended to be dug in the property of lot 118, as that is the lot it was permitted to and closest to. And when she concludes, based on everything she heard, that this well was presumably anticipated at the time for the benefit of the three lots, are you suggesting that that finding is an abuse of discretion? Yes. Yeah, I don't see there's any facts to support that position. It was dug, and at the time, remember, there was a different ownership, right? Same owner for all three at the time? Same owner for all three at the time. And that's the owner that sold both to you and to? Well, later, it's had several generations. Two years apart. Right. So the Poppy Wells sold our lot to us and sold the two lots to the person before. But there's no evidence that that well has done anything other than service the house on my client's property. And so the fact that she's— Well, excuse me, there was no development on one of the other lots for a period of time. Well, that's true. So there was no one to utilize the lot. The lot in the middle has always been an empty lot. Right. If the well was anticipated for the—I hate to use this word, but I'm going to— for the exclusive use of lot 119.  Wouldn't it make sense to put the well in front of 119? It would make sense to put the well on the lot. I mean, for example, there's a cost to bring water by the foot, and if I'm building a well for my lot exclusively, I'm going to put it in front of my lot so I pay less to bring the water to my house. Well, those people weren't around at the time of trial. We don't know— I get that, but I'm going back to the reasonableness of Judge Breslin's conclusion that this was the benefit of all three. I'm just speaking to the reasonableness of her analysis. I submit that it's still unreasonable, based on the fact that the only evidence is that it's only served one house, and no other house—I mean, it's certainly— there's no reason to conclude that it was meant to serve the house that the plaintiff bought in this case. That house had an existing well, and so that's my point that it— I mean, I guess we could say that maybe if somebody built a house on the empty lot, then maybe they were considering that, but I don't see where it would have any inference that it would be used for the house actually where the plaintiff lives, because he's always had a well that serviced that one, too. I have no questions.  May I have one? Of course. So, are you arguing, just so that I'm very clear, that EV Rental Homes owns the lot, owns the well, and that you are entitled to an easement? We don't—I'm saying that we don't—I'm saying that we've always used it, and that we're entitled to an implies easement for prior use. And who do you say owns it? Well, I guess there would be a difference between ownership of the well and ownership— That's all I'm talking about, is ownership of the well. I submit that we do, because we actually paid for and installed a replacement pump. So you're alleging that you own it, and you are alleging that you have an easement on your own well? Yes. Okay, thank you. Can you own a well on property that you don't have a deed for? Well... That's not a rhetorical question. So, in this case, it happens to be in a public easement, and I would submit that it has to belong to— the well itself would have to belong to somebody, even if it's on a public easement. And I think, you know, I'm familiar with this area, and that road was kind of not really improved until more recently. And so at the time, it might have made sense to put the well where they dug it, but as it turns out, it's actually in the public easement. But my point is that the well has to belong to somebody, and my position is that because, you know, it's always serviced this house, it belongs to my client. I mean, if I was going to pick, I might pick the house that's directly in front of, if I was forced, or I might say maybe the city owns the well, and you have an easement. If it's in a public easement— I'm not sure how I get to 119 owns the well. It's between those three choices. And I'm not sure it matters who owns the well ultimately, but— I'm not so sure it matters who actually owns it either, but my client would have the right to use it, continue to use it, because of the prior use. And no one is contesting your right to use it at this point in the process. As I understand it from, you know, the plaintiff's position, he's saying yes. He's not saying we don't have the right not to continue to use it. There's no cross-appeal. There's no cross-appeal. That's correct, yes. These property issues always present interesting questions when they come up at this level, and I thank you for your time. Any initial questions? No. All right, thank you. I'll have an opportunity in rebuttal, Mr. Schrock. Mr. Zdarsky. Please record. Good morning, Honorable Justices. My name is Lawrence Zdarsky, Z-D-A-R-S-K-Y, and I represent the plaintiff, Corey Bliznik. In this matter, he's also the athlete. Our position is pretty straightforward. The trial court did not err and did not abuse her discretion when Judge Breslin made findings of fact and determined that both parties technically have been implied in the easement by implication for the use of this well. I think it probably everybody was a little surprised. Everybody kind of thought that the well was actually on the 118 property. There's three properties. There's 119, which is owned by DD Rentals, and it's an income property. They rent it out to tenants. In between, there's a vacant lot, which is 118, and my client, Corey Bliznik, who purchased a year or two years later from the same common owner, the Popolos, the property at 117. And that 117 has a shallow sand well. I mean, I'm a suburban Chicago boy, so I'm not familiar with wells. I mean, I'm used to municipal water, municipal sewer, so I've learned a lot about what goes on with septics and wells from this particular case. But there's a shallow sand well on 117, which the quality of water is not real good. So that's why we're here. All of a sudden, we realize that the well itself is off of the property, slightly off of the property, which is a vacant property that simply has a driveway on it. Yes. What evidence is there that all three lots had common ownership in 1971 when the well was built? It was established at trial, and I think it's in the record on appeal, that the property went through a series of different ownerships of the various lots, the last one of which was the Popolos, who owned all three. But at the time of construction? At the time of construction, I believe that it showed that 118, which was the vacant lot, actually that was who was permitted. The well was permitted, if you look at the evidence. The well was permitted to lot 118. Also in the evidence, Judge Breslin looked at the letter from the Will County Health Department, which indicated that the records that they had from the old geological survey was the owner of 118 asked for a permit to purchase a well, and that there was never a permit issued for 119 or 117. So I'm thinking, Justice Davenport's question might be, back in 71, when the lot was permitted to 118, was lot 117 and 119 owned by the same individual, or do we know? We know that 118 and 119 were, and then 117 got added into the mix, and then 117 and 118 were owned together. Why did 117 get added into the mix? That's as far back as the record would indicate with the documents that the trial judge looked at. Those documents indicated that that went back probably 20 years, 30 years. Is it true? I'm looking at my little sketch. Yeah, but my notes show that from reading the briefs, 1971, when the well was dug, permitted at 118, that one owner owned 118 and 119, but not 117. I believe that that's correct. When you go back to the deeds. Then at some point in time, 119 was out of the mix, and 118 and 117 were in the mix. What do you mean by in the mix? Well, what I'm saying is they were owned in common ownership. 117 and 118 had common ownership, and then the Poplar Wells, the owner's property in the property, prior to the Poplar Wells, the Warrens ended up consolidating the three lots and then sold it to the Poplar Wells. But with respect to the well, it's only, as it stands right now, 18 and 17 are owned by the same person. And when was the 117 residence built? That was in place. That was in place, as far as we can tell, prior to 1971. But never attempted to connect to that? They did not connect to it until my client bought the property when he realized the quality of a very shallow sand well was there. The Poplar Wells were the soul of the land. In accepting that you're a city boy who had the benefit of city water growing up, the municipality tests the water quality and the water pressure. And I know that perhaps it would be better from the 118 well, but it did satisfy the minimum requirements, correct?  When we purchased the property, when I say we, I said when Mr. Blissett purchased the property, there was a Norwalk test that showed that that sand well met minimum requirements that are required by Cook County, not Cook County, Will County. The issue, however, is kind of a moot point in this respect. The fact that they make a big argument that we have a well so everybody should have a well, and because they already have a well, we get exclusive right to this well. Our position is, and the case law clearly indicates that 100% necessity or need is not required to establish an easement. And Judge Breslin found that there was enough need, and the difference in the relative burdens between the parties, there was enough need here and necessity that Blissett qualified also for an easement to utilize this well. It was, in fact, permitted to the lot that he owns. Mr. Poppenwell, it's uncontroverted evidence, Mr. Poppenwell, when he showed them the boundaries of the property, said this is your well pointing to this particular well. That was considered in the record. So the bottom line was that he had every belief, based upon the prior owner's statement, that that was his well. The opposition, their concept of ownership is slight. I mean, it was uncontroverted, but Mr. Brandon, at the time of the trial, did not testify. He had the ability to testify. There was testimony of record where he tried to buy this, when he found out that we were trying to connect to it, he offered to purchase the four-by-four thing around this well. He wanted to purchase the well. He wanted to purchase the land where this well was at. If they really and truly believed that this was their well, why would they make an offer to my clients to purchase it? Now, could your clients have sold it? Did they own the plot of land around the well? No. So they couldn't have sold it. They couldn't have sold it, which is why we brought this case. Because they fully believed, and they were told by various people at the Health Department, this was permitted to 118. You know, get your permit and connect it as well. There are shared wells all up and down that roadway in Uncorporated Will County. My clients chose to say, hey, we're not going to create any issues. They talked with the B.B. Rental people. That's when that conversation took place about, you know, we'll purchase it from you. The bottom line was that when they didn't get an agreement to enter into a shared well agreement, which was what Will County suggested that they do at that point, they said, well, let's bring in declaratory judgment action to make a determination as to whose rights are whose rights. The ownership issue, ironically, by B.B. Rental, happened later on in this cause. It actually occurred, you know, their counterclaim says nothing about ownership. They saw an implied easement to utilize this property. Later on in the process, they came up with this idea, we own this well. And why did they say they own the well? Well, they tried to point to the contract. They tried to point to the MLS agreement that said it's serviced by a private well. But under cross-examination, their whole argument, their whole house of cards collapsed. They had to admit, Mrs. Udima had to admit, who was also a realtor, that the MLS agreement didn't say they owned the well. It just says it was serviced by a private well. It didn't say who owned that well. The contract itself, if you look at Exhibit B, their trial Exhibit B, it's a standard contract, and the real estate dealer defines the real estate as the real estate, the four corners of the real estate, plus the improvements, fixtures, and personal property contained therein. Contained therein is the four corners of the document. We asked a lot of questions of Mrs. Udima. She had a side letter agreement, any sort of writing, anything that sold them the well by the private wells, because we had the contradictory statement that the private wells had told my client that that was his well. I think the judge made a reasonable, after all this evidence is in, there was no incidence of ownership of the well. The only thing we have is testimony that both parties at some point, well, one party thought it was actually on the property, and then we found out it was like four feet off, but it's at least 13 feet off of 119, and we asked the same question that Your Honor did, is like, if that was meant to be the 119 well, why wouldn't you put it on the property in 119? Seems to me that it was put in 118, which was the vacant lot in between those two properties, and I think the judge made a reasonable conclusion in that respect, and speaking briefly, I know we got tied into those facts, speaking briefly about the standard of review in this case. I mean, we have a slight difference of opinion. Counsel seems to believe it's a de novo review. I think our briefs, we fully set out the case law that would indicate that these are factual determinations that Judge Gretzky made, and that in all cases, these easement type of cases and declaratory judgments and the equity that's involved there, it's an abuse of discretion standard, and the abuse of discretion standard is quite significant. Her findings, in fact, are fairly clear. I think pretty clear. I shouldn't say fairly or pretty. They're absolutely clear as to why she believed what the ownership wanted. In an abuse of discretion standard, it's got to be shown it's clearly against logic that the court acted arbitrarily without conscientious judgment, exceeded all bounds of reason, and ignored or recognized principles of law. Now, we could clearly meet the manifest way to the evidence test as well, but on an abuse of discretion standard, there's no way that we believe that it could be determined that the court's taking of the facts in this case, taking the facts that both of these owners come late to the party, so to speak, this well was already built. But when we look at how it was built, who it was permitted to, where it was located, the fact that... I guess I have to thank Mr. Schrock for trying to make it a simple analysis. It's really not that simple. According to his analysis, he puts forth a test when it says, why does Bliznik have an interest, a tangible interest? He says, Bliznik can't have a tangible interest because the well isn't on his property. But what he basically is saying is, my client got there first, first come, last served, we're here, nobody else can hook into this thing, it's not on our property, so ignore the rule that I set for Bliznik and don't apply it to BB Rental. Because it's not on his property either. So I could make the same argument that he doesn't get an implied easement by necessity because it's not on his property, so he has no tangible interest. That showed no incidents of ownership. The only incidents of ownership or responsibility or use is my client's property, 118. That's who the well was permitted to. That's who built it, the owner of 118. We own 118. That's the only incidents of ownership. Even given that, we're not claiming we own that well because we all know it's no longer, it's not in the property. What we're claiming is, is that both parties, as Judge Breslin indicated, would have a right to hook into that well because that appears to be, in her determination, the intention of the parties. We have as much of a tangible interest in this as they do. The fact that they were the first ones to hook into it doesn't necessarily preclude the other people from hooking into it. And then we get down to this issue of exclusivity. We scoured the case law in the state of Illinois. We found no cases where an implied easement of necessity or an implied easement of prior use can be granted under exclusivity. I think in our brief, we indicated, you know, it's usually a term that's discussed when trying to determine a prescriptive easement by adverse possession. We're not talking about possession. We're talking about use. So they have no incidence of ownership, but the idea that they were the first ones to hook in that gives them the right absolutely to exclusivity. And even Judge Breslin looked into this situation quite frankly when she looked at the burdens between the parties. She did not believe that the burden that was put forth by Ms. Zudema, who was a real estate person, who said, well, I simply just can't get enough money, more money for this if it's not an exclusive loan. That's why I want an exclusive loan. That wasn't enough for Judge Breslin. I'm hoping it won't be enough for you either. Bottom line is that we believe that they cannot meet the standard of showing that Judge Breslin abused her discretion in making the findings of fact that she did in determining that both parties have a right to utilize this well. I see my time is up. I'm happy to answer any further questions that you might have. No further questions. Thank you, Mr. Zdarsky. Mr. Schrock, you get the last word. Thank you. Real briefly, I think one of the key things here is that in 71, when this was permitted, the owner of my client's lot and the owner of 118 were the same. It did not involve the owner of 119 in his client's lot. Therefore, for the court to assume that it was dug for all three, it doesn't hold up. There's no basis for that. It's a problem that just to assume that is the case. Were the lots planted, though, at that time? They were in existence? Yeah, they were. Okay, thank you. They were clearly planted at that time. But they had different ownership at that time, clearly. They merged slightly before the Poppy Wells, and the Poppy Wells sold them off differently. That's the right-making of a case like this. I think that that fact alone belies most of Mr. Zdarsky's argument. I also submit that it pokes a hole and deflates Judge Breslin's ruling that it was clear that while it was dug and permitted, it was meant for all three lots. Again, ask you to reverse and find accordingly. Thank you for your time. Thank you very much. The court appreciates a spirited argument by both sides. We're going to take the matter under advisement and issue a decision in due course. The court is adjourned until the next argument. Thank you very much.